[Civ. No. 12734.   First Dist., Div. Two.   Apr. 24, 1945.]

JOHN B. AMPUERO, Appellant, v. BEATRICE S. LUCE
et al., Respondents.

Deadrich & Spencer for Appellant.

Henry S. Lyon and Elwood Murphey for Respondents.

GOODELL, J.—The plaintiff and defendant Beatrice S. Luce are owners in joint tenancy of a parcel of real property. This suit was brought to quiet title, to enforce a constructive trust and to cancel the deed to the property as to defendant's interest, on the grounds of fraud and failure of consideration. The appeal is from a judgment in defendant's favor.

The appellant and Addie E. Ampuero, his wife, had their home on Fruitvale Avenue near East 14th Street in Oakland. It had cost about $12,000, was unencumbered and stood in the wife's name. The couple were getting along in years and the wife, who was suffering from heart trouble, did not expect to live long. They had negotiated with the Altenheim (an old people's home) with a view to conveying this property to that institution in exchange for its undertaking to care for the appellant for the remainder of his life, but such arrangement was not acceptable to the institution. Similar negotiations with the Ethel Moore Memorial had similar results.

In October, 1934, Mrs. Ampuero sent for an Oakland lawyer for the purpose of settling her affairs. She wanted to provide for her husband but she expressed the fear that he might through improvidence part with the property and even-

tually find himself in want. She also told the attorney that the respondent, then a visitor in the home, was an intimate lifelong friend who had helped her throughout the years, and that she wanted to provide for her as well as for appellant. He advised her to make a will, but this advice she rejected; he then suggested the making of a deed with a life estate reserved to the appellant, but this too she rejected. She arrived at her own decision to make a deed conveying this property to appellant and respondent in joint tenancy, and such deed was executed, acknowledged and recorded. On November 24, 1934, she died. At the time the deed was made Mrs. Ampuero said to the respondent in the presence of the appellant and the attorney (according to the latter's testimony): "Mrs. Luce, I am making a joint tenancy deed between you and John. You know how John handles affairs. I want you to be sure to see John never wants for anything" to which Mrs. Luce replied: "Don't worry, Addie, things will be taken care of and John will be taken care of." The court found that the appellant, the respondent and the grantor, Addie E. Ampuero, "entered into an oral understanding and agreement to the effect that reasonable provision should and would be made for the care and living" of the appellant by the respondent "in the event the income from said property and/or other sources should prove inadequate to provide the same," and that this oral understanding was a consideration for the deed.

The Ampueros also owned 106 shares of Transamerica stock which likewise was put into the names of appellant and respondent as joint tenants, and Mrs. Ampuero also opened a bank account in their joint names with a deposit of $100.50. The appellant had, and retained in his own name, 16 shares of Transamerica stock.

In the eight years from his wife's death to October, 1942, the appellant occupied the home and rented rooms therein (as his wife had intended) which rentals yielded a monthly income of about $115, out of which he paid taxes and insurance and made repairs. The net income gave him his living but did not create any surplus. The respondent never received, nor asked for, any of the income.

In the fall of 1942 the appellant was told by a doctor that he needed an operation, the cost of which would be at least $400. There remained but $75 in the joint account and he

had no other ready money. At appellant's request a niece of respondent on October 18, 1942, wrote respondent as follows: "Dear Aunt Beatrice:

"I am writing this for John Ampuero as he is quite ill, he has to have his prostate gland removed as he has had several hemorrages.

"He has been to two Dr.'s here in Oakland and they wanted $750 so he came out to see me and wanted me to take him to Dr. Dillion Dad's Dr. in San Francisco so I took him last Friday and he will do it for $400 at Stanford Lane Hospital. He will have to stay there three weeks. He does not have the money for the operation so he wants to know if you can help him or if you can come down. If you cannot come down will you please write him at once. We all have our troubles. How is every one up there? Hope all o. k. This war is sure terrible we notice things getting worse every day. Kindness regards to every one. Your niece Edith."

To this the respondent replied on the 20th directly to appellant as follows:

"Dear John:

"Received a letter from Edith this a. m. saying you had to be operated upon and if I could let you have the money $400. Sorry John I cannot let you have some, my income is so small takes it all for my expenses.

"I had a fall and all I can do to get around hardly can bend over and it pains. Going over to the Dr. makes me sick. Why don't you see Baker John he might let you have some money.

"Your rooms must be all taken. Couldn't you pay so much down then each month pay as you can. Why don't you phone to Irene see can come up her family must be grown up. She will be near.

"Hope you get along all right. Takes time.

"Thought you were going to sell your place?

"I will close have to lye down in such pain.

                              "Best regards,
                                 "Beatrice Luce."

The appellant treated these letters as a demand and refusal of performance, and commenced this suit, notwithstanding no operation had been performed.

The first count of the complaint states that the deed was made upon the express condition that respondent would sup-

ply appellant with the necessaries of life in the event the income from the property proved inadequate to do so; it alleges appellant's need of an operation and his inability to furnish funds for it; the demand and refusal; that because of respondent's breach the entire consideration for the conveyance of respondent's interest had failed, and that the property had "reverted to plaintiff."

The second count was to quiet plaintiff's title to the whole interest in the property.

The third count is based upon claimed fraud. It alleges that the respondent made her promise to the grantor *if* Addie E. Ampuero would convey the property in joint tenancy; that the representations were false, known to be false, and that she never intended to perform; that Mrs. Ampuero and appellant believed the representations, that the deed was made in reliance on them, and that the respondent is a constructive trustee for the benefit of appellant.

The complaint contained an alternative prayer that the court make a binding declaration of the rights and duties of plaintiff and defendant. The court did so, holding that each party is the owner of an undivided one-half interest in the property, in joint tenancy; that "plaintiff is entitled to reasonable provision for his care and living and that defendant is obligated to provide the same in the event plaintiff's income from other sources shall prove inadequate for such purposes," and that "plaintiff has received and had reasonable care and living and no breach or default on the part of Beatrice S. Luce exists."

The appellant contends that the judgment is without support in the evidence and is contrary to law.

The first count, based on failure of consideration, states that the deed was made upon the *express condition* that respondent would supply appellant with the necessaries of life in certain circumstances. The third count alleges that the respondent promised to supply such necessaries *if* Addie E. Ampuero would convey the property in joint tenancy. There was nothing said in the conversation in question which can be construed as creating a condition. The attorney's version appears earlier. According to John Ampuero's own version his wife said to Mrs. Luce: "I am deeding this property to you . . . and John with the understanding you are supposed to take care of him when he needs any money or care,

you are supposed to help him out" and she replied "Yes, I will do that." There is no evidence of any solicitation or pressure, or the proposal of anything, by the respondent. The evidence shows that she knew nothing of the proposed deed until after Mrs. Ampuero had decided to make it. The testimony of the attorney that Mrs. Ampuero "was a very headstrong lady and quite determined in her desires" was borne out by the testimony of other witnesses. The legal advice had been sought by her, and if there had been anything conditional about the language used the attorney, who was there to look after the grantor's interests, would have so testified. The deed is an ordinary joint tenancy deed. No condition is expressed within its four corners (see *James* v. *James,* 80 Cal.App. 185, 197, 198 [251 P. 666], quoted in *Lavely* v. *Nonemaker,* 212 Cal. 380, 384, 385 [298 P. 976]; see, also, *White* v. *Hendley,* 35 Cal.App. 267, 272, 273 [169 P. 710]). The allegations, then, that the deed was made upon condition simply were not proved.

In the third count the allegations that the representations were knowingly false and were made without any intention of performance pleaded *actual fraud* (*Lawrence* v. *Gayetty,* 78 Cal. 126, 131, 132 [20 P. 382, 12 Am.St.Rep. 29]), but no actual fraud was proved and the court so found. Indeed, appellant's counsel do not now claim that there was actual fraud. They claim it is a case of *constructive fraud.* They state their position thus: "The uncontradicted evidence shows that Mrs. Luce failed and refused to perform her oral promise. In so doing, she perpetrated the fraud complained of." This is repeated in appellant's closing brief as follows: "it is our contention that the mere breach of this oral promise to furnish necessaries of life by the defendant does create fraud, and make the defendant a constructive trustee. . . ." The answer to this contention is found in *Lawrence* v. *Gayetty,* 78 Cal. 126, *supra,* and in the long line of cases which follow it. In that case, as in this, the plaintiff sued for fraud and failure of consideration. The plaintiff had conveyed to the defendant an interest in some mining property, the consideration being the defendant's promise immediately to interest men of capital in the property looking to its development and improvement. The defendant was inactive after the conveyances were made and the plaintiff sued for their cancellation. The trial court found that the defendant's promise had not been kept, but it also found that it was not fraudu-

lent. It found a failure of consideration, and nothing more. On the authority of *Hartman* v. *Reed*, 50 Cal. 485, the court held that the plaintiff's remedy was an action at law for damages for breach of contract and not a suit in equity to cancel the deeds. In holding that no condition had been attached to the deeds the court said (p. 132): "The plaintiff saw proper to accept the verbal promise of the defendants to do certain things without any agreement or understanding that the failure to do the acts as promised should be a condition, or in any way affect the validity of the deed, or entitle him to a reconveyance." With respect to the claim that the *mere breach of the oral promise creates a fraud* the court there said (p. 131): "The mere failure to perform the covenant does not relate back to and render the same fraudulent." In *Feeney* v. *Howard*, 79 Cal. 525, 529 [21 P. 984, 12 Am.St. Rep. 162, 4 L.R.A. 826], the court expressed the same thought as follows: "The mere failure to perform a parol agreement which was made in good faith is not fraud." In *Rheingans* v. *Smith*, 161 Cal. 362, 366 [119 P. 494, Ann.Cas. 1913B 1140], it is said: "In the absence of confidential relations between the parties it is only when such promise is made without any intention of performing it that it becomes fraudulent in law or equity," citing the Lawrence case. (See, also, *Ayers* v. *Southern Pacific R. R. Co.*, 173 Cal. 74, 79 [159 P. 144, L.R.A. 1917F 949]; *Locomobile Co.* v. *Belasco*, 32 Cal.App. 329, 332 [162 P. 920], and *Meehan* v. *Huntington L. & I. Co.*, 39 Cal. App.2d 349, 354 [103 P.2d 196].) In support of their position that mere failure to perform gave rise to a constructive trust counsel for appellant quote from *Cooney* v. *Glynn*, 157 Cal. 583, 587 [108 P. 506], as follows: "It is the violation of the parol promise which constitutes the fraud upon which the trust arises. . . ." But this was said with respect to an express promise made by a son to his mother, to whom he stood in a fiduciary relation. He promised her that if she would convey the property to him he would hold it in trust for his sister and convey it to her on demand. He so held it from 1891 until 1904, when he repudiated his trust by claiming it as his own. *Cooney* v. *Glynn* follows the Brison case and no more concise statement of the rule now under discussion will be found than that contained in *Feeney* v. *Howard*, 79 Cal. 525, 529 [21 P. 984, 12 Am.St.Rep. 162, 4 L.R.A. 826], as follows: "It . . . was held in *Brison* v. *Brison*, 75

Cal. 525 [17 P. 689, 7 Am.St.Rep. 189], that if by means of a parol promise to reconvey a party obtains an absolute deed without consideration from one to whom he stands in a fiduciary relation, the violation of the promise is constructive fraud, although at the time of the promise there was no intention not to perform." *Steinberger* v. *Steinberger,* 60 Cal. App.2d 116 [140 P.2d 31], cited by appellant, is likewise distinguishable, for there, as in *Cooney* v. *Glynn,* a fiduciary relation was established and the conveyance was made upon an oral promise to reconvey. In *Becker* v. *Schwerdtle,* 141 Cal. 386 [74 P. 1029], which was before the court on demurrer, the complaint alleged a mother-and-son confidential relation, but, it also alleged the making of the promise by the son to the mother (of twenty dollars a month for her support) without any intention of performance, which pleaded a case of *actual* fraud. In *Neilsen* v. *Neilsen,* 216 Cal. 150 [13 P.2d 715], the court found not only a confidential relation between mother and son but that the agreement entered into when she deeded the property was made by him without any intention of performing it. There was presented, then, a case of constructive fraud plus actual fraud, just as in *Becker* v. *Schwerdtle.* Granting, as appellant claims, that "the law of constructive trusts applies equally to furnishing support, as well as to a reconveyance" (25 Cal.Jur. § 42, p. 173), the same text (*Id.* § 33, p. 162) points out that "a fiduciary or confidential relationship must have existed between the grantor and grantee" and such "relationship is made to appear as an ingredient of 'constructive' fraud" (*Id.*, § 34, p. 165). In *Johnson* v. *Clark,* 7 Cal.2d 529 [61 P.2d 767], cited by appellant, the trial court had sustained a demurrer to the complaint without leave to amend. In reversing the judgment the court pointed out that the complaint showed that confidential relations existed between the two sisters. At page 535 this is said: "The transaction set forth in the complaint is governed by the rules pertaining to persons occupying confidential relations, and is presumed to be fraudulent without other allegations of fraud in the complaint. . . . The burden is cast upon defendant to allege and prove the fairness of the transaction." *Teich* v. *San Jose etc. Bank,* 8 Cal. App. 397 [97 P. 167], differs in its facts from appellant's other cases, but it merely holds that a constructive trust arises where a stipulation to redeem from a tax sale was violated

by the promisor bidding in the property for its own benefit.

■ This brings us to appellant's claim that the evidence discloses without contradiction that "a relationship of trust and confidence existed between Mrs. Luce and Mrs. Ampuero." No evidence whatever is pointed out to show such relation beyond the fact that they had been close friends since girlhood, had corresponded, visited back and forth, and Mrs. Ampuero considered the respondent the most reliable friend she had. It is conceded by respondent's counsel that Mrs. Ampuero had confidence in Mrs. Luce. But that is not to say that a confidential or fiduciary relation, as those terms are used in the authorities (see 9 Cal.Jur. §§ 106 et seq., p. 228), existed between them. The circumstances under which the deed was made have been set forth earlier. As said in the Brison case, *supra,* "It is not every case where parties trust each other that the law recognizes as confidential." Several witnesses beside the attorney testified that Mrs. Ampuero was headstrong and "knew what she wanted." And, after all, the lawyer was sitting at *her* elbow, not at the respondent's. ■ But wholly apart from these considerations, no facts showing a relation of trust and confidence were pleaded. No such issue was tendered and therefore there is no finding on the subject. If such relation is to be relied on it must be pleaded. (12 Cal.Jur. § 62, p. 802; 11 McK.Dig. § 61, p. 292; *Feeney* v. *Howard,* 79 Cal. 525, 529, *supra.*) In *Schott* v. *Schott,* 168 Cal. 342, 345 [143 P. 595], admittedly a mother-and-son transaction, the court pointed out that "There was no allegation whatever in the pleadings showing any relationship of any kind between the parties. . . ."

■ The interesting feature of this case is that the operation—the apparent need of which motivated the letter asking for the $400—was never performed. Toward the end of the trial the court asked the appellant "Did you have an operation?" and he answered "No sir" . . . "Q. How do you feel now? A. Oh, I feel a good deal better but it still bothers me. Q. How long were you sick? A. Oh, I think about three or four months." The record does *not* disclose that the operation was not performed because the money was not forthcoming from the respondent. Indeed no reason was suggested. For aught that appears the appellant might have had later or other medical advice that an operation was not necessary or that it would be unsafe or unwise. The findings "That

no breach or default exists under the contemporaneous oral agreement as above set forth as of the date of the filing of this action" and "That it is not true that the defendant Beatrice S. Luce violated, breached, or defaulted in any of the terms or agreements as a consideration for which the aforesaid deed was made, executed, and delivered" are amply supported by the record. To again quote from *Lawrence* v. *Gayetty* (78 Cal. at 134): "If the mere promise and the failure to perform is not sufficient to set aside a deed on the ground of fraud, as we have shown, the fact that the same acts are characterized in the pleading as a failure of consideration cannot give them additional force, and thereby bring about the same result." If in the instant case the court had found a breach, then on the present record (with no proof of an operation) it could not have awarded anything beyond nominal damages for, as we have seen from the cases already discussed, the equitable remedies which the appellant invoked are not available in a case such as this. (*Schott* v. *Schott*, 168 Cal. 342, *supra; Lavely* v. *Nonemaker*, 212 Cal. 380, *supra*. See, also, *Conley* v. *Sharpe*, 58 Cal.App.2d 145 [136 P.2d 376], and *Dalbkermeyer* v. *Rader*, 96 Cal.App. 23 [273 P. 600].)

▪ The judgment entered in this case describes the property, decrees that the plaintiff and defendant each owns an undivided one-half interest in joint tenancy, and awards the respondent her costs of suit. The appellant complains that it does not also include the conclusions of law. We assume that the basis for this objection is that a declaration of the rights and duties of the parties was prayed, and it is felt that such declaration should appear on the face of the judgment itself. We are satisfied that this is unnecessary. That the findings may be read in connection with the judgment is settled. (14 Cal.Jur. § 54, p. 959; *Watson* v. *Lawson*, 166 Cal. 235 [135 P. 961]; *Pacific Paving Co.* v. *Vizelich*, 1 Cal.App. 281, 284 [82 P. 82]; *Hoover* v. *Lester*, 16 Cal.App. 151, 153 [116 P. 382]; *Brown* v. *Superior Court*, 110 Cal.App. 464, 466 [294 P. 428]; *Minehan* v. *Silveria*, 131 Cal.App. 317 [21 P.2d 617]; *de la Cuesta* v. *Bazzi*, 47 Cal.App.2d 661, 672 [118 P.2d 909].) The declaration of the rights and duties of the parties is set forth in the findings of fact and conclusions of law and if, in the future, a breach of the contract in question is claimed, there can be no doubt that that declaration, which was part

of the decision of the case, will be read in connection with the judgment and will be considered part of it.

The judgment is affirmed.

Nourse, P. J., and Dooling, J. pro tem., concurred.

A petition for a rehearing was denied May 24, 1945, and appellant's petition for a hearing by the Supreme Court was denied June 21, 1945.